## JOLLY *v.* MICHIGAN STEEL CORPORATION.

MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—SCOPE OF EMPLOYMENT—EVIDENCE.

> In reviewing an award under the workmen's compensation act to the dependents of an employee fatally injured while operating a steam crane hoisting sheet metal for a subcontractor engaged in laying a metal roof for the employer, it cannot be said that it was established by competent testimony and beyond dispute that deceased had so disregarded positive orders as to remove him from the ambit of his employment, where the foreman's testimony that he had given instructions to the employees not to so assist the subcontractors in moving materials was contradicted by other employees who testified that said assistance was a daily occurrence and was under the instructions of the foreman.[1]

Certiorari to Department of Labor and Industry. Submitted January 7, 1926. (Docket No. 36.) Decided March 20, 1926.

Gladys Jolly presented her claim for compensation against the Michigan Steel Corporation for the acci-

[1] Workmen's Compensation Acts, C. J. § 77.
Injuries resulting in doing prohibited act as arising out of and in the course of the employment, see notes in 7 B. R. C. 159; L. R. A. 1918F, 914.

dental death of her husband in defendant's employ. From an order awarding compensation, defendant and the Royal Indemnity Company, insurer, bring certiorari. Affirmed.

*Frederick J. Ward,* for appellants.

*William V. Capler,* for appellee.

FELLOWS, J. Before the happening of the accident here under consideration, defendant had been enlarging its plant. In the work of construction the principal contractor owned and used a large crane operated by steam to move heavy material. The principal contractor had completed his part of the work but Yanikis Brothers, subcontractors, had not finished their work of laying metal roofing. When the principal contractor completed his part of the work, he sold the crane to defendant and it was left on the premises. On June 25, 1923, plaintiff's husband, Eugene Jolly, an employee of defendant, was operating the crane, and while moving some of the sheet metal used for roofing the crane tipped over, and he was so badly scalded by escaping steam that he died within a few hours.

Defendant insisted before the commission and here insists that the accident did not arise out of and in the course of the workman's employment. It is its claim that it used the crane exclusively to unload coal for itself and that instructions were given by its master mechanic, Mr. Barr, to the employees not to assist the subcontractors in moving material which was to be used in the construction work, and Mr. Barr gave testimony tending to support such claim. Such of his testimony as related to instructions given deceased were stricken out because equally within the knowledge of the deceased, and error is not assigned on such ruling. But the testimony of Mr. Barr was

somewhat modified on cross-examination and did not go unchallenged.   A witness who preceded deceased in the operation of the crane testified:

"*Q.* Did you notice others working around there?

"*A.* Oh, yes, other fellows working for other contractors.

"*Q.* Do the Michigan Steel Corporation employees, like yourself and others, assist these men?

"*A.* Why, yes, when I was working in the mill with these electric cranes Barr told us to give them a lift when they wanted it.   *   *   *

"*Q.* Did you see any other lifting done around there, for any other people?

"*A.* Barr gave his men the privilege of doing that. *   *   *   I know this."

Another witness, an employee of defendant, testified:

"*Q.* There was some construction work going on there?

"*A.* Yes.

"*Q.* Did you ever notice at any time, on this particular day of the accident, or prior thereto, that sheet metal of the same description or nature as this particular sheet metal on this particular day, was being hoisted, or had ever been hoisted before by Mr. Jolly?

"*A.* Yes, daily.

"*Q.* Daily?

"*A.* Yes, sir.

"*Q.* What products, if you know, did the Michigan Steel Co., or whatever the name of your employer was at that time, handle, if you know?

"*A.* Well, that was a kind of a subcontractor, this was a subcontractor that was doing this sheet metal work.

"*Q.* A subcontractor?

"*A.* Yes, sir, and to get them out of the way, all of us fellows was working and giving them a hand to get the work finished, to get them out.

"*Q.* All of you fellows?

"*A.* The most of us, when they were stuck with anything like that.

"*Q.* Under whose instructions did you do that?

"*A.* Mr. Barr.

"*Q.* He told you to do it?
"*A.* Yes.
"*Q.* He was your foreman?
"*A.* Yes."

Upon this record we do not think it can be said, as contended by defendant, that it is established by competent testimony and beyond dispute that deceased had so disregarded positive orders as to remove him from the ambit of his employment.   See *Punches* v. *American Box Board Co.*, 216 Mich. 342; *Kent* v. *Boyne City Chemical Co.*, 195 Mich. 671; *Finney* v. *City of Croswell*, 220 Mich. 637; *Hulswit* v. *Escanaba Manfg. Co.*, 218 Mich. 331; *Rayner* v. *Sligh Furniture Co.*, 180 Mich. 168 (L. R. A. 1916A, 22, Ann. Cas. 1916A, 386).

The award will be affirmed.

BIRD, C. J., and SHARPE, SNOW, STEERE, WIEST, CLARK, and McDONALD, JJ., concurred.